687 So.2d 258 (1996)
Harley L. VAUSE, Individually, and as Personal Representative of the Estate of Joyce L. Vause, Deceased, Appellant,
v.
BAY MEDICAL CENTER, Douglas L. Stringer, M.D., Panama City Neurosurgical Associates, P.A., John Taylor, Individually, and Patrick Bowman, Individually, Appellees.
No. 94-549.
District Court of Appeal of Florida, First District.
December 30, 1996.
Rehearing Denied February 17, 1997.
*259 Sidney L. Matthew of Gorman & Matthew, P.A., Tallahassee, for appellant.
G. Bruce Hill and William W. Large of Adams, Hill, Reis, Adams, Hall & Schieffelin, Orlando, for appellees, Bay Medical Center, John Taylor, and Patrick Bowman.
Richard B. Collins and C. Timothy Gray of Collins and Truett, P.A., Tallahassee, for appellees, Douglas L. Stringer, M.D., and Panama City Neurosurgical Associates, P.A.

EN BANC OPINION ON MOTION FOR REHEARING
WOLF, Judge.
We grant appellees' motion for rehearing, withdraw the opinion issued in this case on October 27, 1995, and substitute the following opinion in its place. The appellant/plaintiff challenges the trial court's dismissal with prejudice of his complaint seeking damages for the wrongful death of his wife. We affirm the trial court's decision in part and reverse in part.
*260 The plaintiff filed an 18-count complaint seeking damages for the wrongful death of his wife, 52-year-old Joyce L. Vause. The complaint alleges that on July 21, 1991, Joyce Vause, a nurse employed by Bay Medical Center (BMC), accompanied a patient inside BMC's hyperbaric chamber. According to the complaint, BMC and its administrators had actual knowledge that there was no competent technical staff operating the chamber, and there was no competent director in charge of the department. The complaint alleges that grossly negligent errors were committed both during the simulated dive and after Vause exited the chamber, at which time staff failed to diagnose Vause's obvious signs of decompression sickness. At 11:30 a.m., approximately two hours after exiting the chamber, Joyce Vause died from nitrogen embolization due to decompression sickness.
In addition to BMC itself, the complaint individually names John Taylor, Patrick Bowman, and Dr. Douglas Stringer, as defendants.[1] The complaint alleges that defendant Dr. Douglas Stringer was codirector of the hyperbaric center, that defendant Patrick Bowman was the operator of the hyperbaric chamber, and that defendant John Taylor was the administrator of the Bay Medical Center. The complaint in pertinent part describes the duties and responsibilities of the parties at the Bay Medical Center (BMC) as follows:
12. At all times material hereto, BAY MEDICAL CENTER'S Hyperbaric Medicine Department was separated from other departments, works, and missions of the Hospital. The activities of the Hyperbaric Medicine Department included the treatment of decompression sickness. Decompression sickness can result from the formation of nitrogen bubbles in the blood or body tissue due to changes of atmospheric pressure. Often the condition is suffered by scuba divers who ascend too quickly at the conclusion of a dive or stay under water too long without properly ascending to the surface.
13. A hyperbaric chamber is an artificial environment which is used to cure decompression sickness. The hyperbaric chamber is a cylindrical metal tank. A scuba diver with decompression sickness (commonly referred to as the "bends") is placed inside the chamber during the treatment process. It is also routine for a registered nurse to also get inside the chamber with the patient during the treatment process to administer medication or provide other necessary assistance to the patient. The chamber operators specially trained in hyperbaric chamber operations remain outside the hyperbaric chamber and have exclusive control over the atmospheric condition inside the chamber. During the treatment process, the chamber operators regulate the atmospheric pressure inside the chamber under a calculated process and also provide specific mixtures of gases to each person inside the chamber during a simulated "dive." It is required after a "dive" to ensure that neither the patient nor nurse (tender) have untreated decompression sickness.
14. The medical director of the hyperbaric chamber establishes the procedures and administers the manner in which the chamber operators regulate the conditions inside the hyperbaric chamber to the patient and the attending nurse. The medical director and the BAY MEDICAL CENTER hospital administrator also has a duty to ensure that only competent properly trained and properly skilled persons participate as chamber operators when the hyperbaric chamber is being used. The medical director of the hyperbaric chamber has a duty to refuse to treat any person with decompression sickness in the hyperbaric chamber if there are not competent, skilled, and properly trained chamber operators available to operate the chamber at any given time.
15. The attending physician has a duty to evaluate any person with decompression sickness (the "bends") and to prescribe the particular procedure and protocol to be followed by the chamber operators in *261 treating a person with the "bends." The particular procedures and protocol followed by the chamber operator are under the exclusive control of the attending physician, and the chamber operators are under a duty to follow the exact procedures and protocol established by the attending physician during any particular treatment of a person.
16. Since 1984, JOYCE L. VAUSE, R.N., was a registered nurse employed by BAY MEDICAL CENTER and assigned primarily to full-time duties in the Hospital's Obstetric Department. The Obstetric Department is unrelated to the Hyperbaric Medicine Department at BAY MEDICAL CENTER. Since 1988, JOYCE L. VAUSE, R.N., worked part-time as an oncall nurse in the BAY MEDICAL CENTER Hyperbaric Department. The representative, agents, and employees of BAY MEDICAL CENTER who committed the acts of gross negligence complained of herein which caused the death of JOYCE L. VAUSE, R.N., were operating in the furtherance of the business of BAY MEDICAL CENTER, but were assigned primarily to unrelated works to that of JOYCE L. VAUSE, R.N.
The defendants filed motions to dismiss the complaint on various grounds, including sovereign immunity and the employer's tort immunity under section 440.11, Florida Statutes, as well as the plaintiff's election of a workers' compensation remedy. The trial court dismissed the complaint with prejudice, without explaining the basis for its ruling.
The dismissal was improper to the extent that it was based upon the plaintiff's having elected a workers' compensation remedy. Election of remedies is an affirmative defense that is not properly raised by means of a motion to dismiss where the affirmative defense does not appear on the face of the prior pleading. Ecological Science Corp. v. Boca Ciega Sanitary Dist., 317 So.2d 857 (Fla. 2d DCA 1975). See also Harold Silver, P.A. v. Farmers Bank & Trust Co., 498 So.2d 984 (Fla. 1st DCA 1986). If the court is required to consider matters outside the four corners of the complaint, then the cause is not subject to dismissal on the basis of the affirmative defense. Mettler, Inc. v. Ellen Tracy, Inc., 648 So.2d 253 (Fla. 2d DCA 1994); Board of County Commissioners of Polk County, Fla. v. Aetna Casualty and Surety Co., 604 So.2d 850 (Fla. 2d DCA 1992), rev. denied, 613 So.2d 2 (Fla.1993); Attias v. Faroy Realty Co., 609 So.2d 105 (Fla. 3d DCA 1992). Even a relatively straightforward affirmative defense, such as one based upon the statute of limitations, is not a basis for dismissal unless the complaint affirmatively and clearly shows the conclusive applicability of the defense. Alexander Hamilton Corp. v. Leeson, 508 So.2d 513 (Fla. 4th DCA 1987); see Hett v. Madison Mut. Ins. Co., 621 So.2d 764 (Fla. 2d DCA 1993); rev. dismissed, 632 So.2d 1026 (Fla.), cert. denied, 511 U.S. 1133, 114 S.Ct. 2147, 128 L.Ed.2d 874 (1994). The plaintiff's complaint does not clearly show the applicability of the defense. Indeed, nowhere in the complaint is it asserted or suggested that the plaintiff pursued a workers' compensation remedy to a determination on the merits or to final settlement so as to give rise to an election of remedies defense. See Lowry v. Logan, 650 So.2d 653, 657 (Fla. 1st DCA), rev. denied, 659 So.2d 1087 (Fla.1995). Consequently, the defense could not have been the basis for dismissal of the complaint against any of the defendants.
It is not disputed that BMC is a public hospital vested with sovereign immunity; therefore, BMC is not liable for the willful, wanton, or malicious conduct of its employees. See § 768.28(9)(a), Fla.Stat. (1991); Gonzalez v. Metropolitan Dade County Public Health Trust, 651 So.2d 673, 676 (Fla.1995); Elliott v. Dugger, 579 So.2d 827 (Fla. 1st DCA), rev. denied, 591 So.2d 181 (Fla.1991). Appellant, however, asserts that in accordance with the decision in Holmes County School Bd. v. Duffell, 651 So.2d 1176 (Fla.1995), BMC as a public entity can be sued for the negligent act of its employees, notwithstanding the broad immunity from suit granted to employers and coemployees of workers who are injured on the job and who are entitled to workers' compensation benefits. Although in Holmes, the court recognizes that under section 440.11(1), Florida Statutes, a public employer *262 could be liable if an injury occurred as a result of the negligence of a coemployee "assigned primarily to unrelated works," appellant cites no case nor law which would support his position that an obstetrical nurse who works regularly, albeit on a part-time basis in another department providing health care, is engaged in work unrelated to that of the hospital supervisor, the departmental supervisor, or the operator of the machine which is utilized to provide care for the patient whom the nurse is attending.
Section 440.11(1), Florida Statutes (1991), in pertinent part states,
The liability of an employer ... shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee.... The same immunities from liability enjoyed by the employer when such employee is acting in furtherance of the employer's business shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business.... Such fellow-employee immunities shall not be applicable ... to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.
The appellant relies heavily on the case of Holmes County, supra, in arguing that he is entitled to sue BMC and that his complaint sufficiently alleges that the decedent and the defendants were involved in unrelated works pursuant to section 440.11(1), Florida Statutes. In Holmes, however, there was no dispute concerning whether the defendants were involved in unrelated works:
The trial court made a determination that Duffell and Lewis were assigned to unrelated works. This determination was not disputed on appeal to the district court, addressed by the district court or presented in the petition for our review.
Id. at 1177, n. 1. The supreme court in Holmes did not address the issue which is before this court; therefore, Holmes offers no support for the appellant's argument. Holmes is also factually distinguishable in that the injured employee there was employed as a school custodian at the time of the injury, and the temporary duties which were undertaken at the time of the injury, unloading school children from a school bus, were in no way related to his normal duties as a custodian. In the instant case, appellant's wife was acting in her capacity as a part-time hyperbaric nurse and performing duties associated with that employment at the time of the injury.
The case of State of Florida Department of Corrections v. Koch, 582 So.2d 5 (Fla. 1st DCA), rev. denied, 592 So.2d 679 (Fla.1991), relied on by appellant, also provides no support for appellant's contention. As this court noted, "In the present case, neither party disputes that, pursuant to the Workers' Compensation Act, victim Koch and DOC employee Tyre were co-employees `assigned primarily to unrelated works.'" Id. at 7.
The only cases which have specifically addressed what constitutes "unrelated works" have held that while employees may have different duties as related to the same project, it does not mean they are involved in "unrelated works." Abraham v. Dzafic, 666 So.2d 232 (Fla. 2d DCA 1995); Johnson v. Comet Steel Erection, Inc., 435 So.2d 908, 909 (Fla. 3d DCA 1983).[2] In Johnson, the court held,
Where appellant, an employee of the general contractor, was injured as a result of the ordinary negligence of the subcontractor's employee while both were employed on-site in the same construction project, the fact that appellant was a common laborer for the general contractor and the tortfeasor was a welder for the subcontractor did not make their work "unrelated" so that the immunity enjoyed by the subcontractor from suit by an employee of the general contractor would be inapplicable.
In the instant case, while there were conclusory allegations that the coemployees were engaged in unrelated works, the alleged *263 facts do not support this conclusion. At the time of the injury to the deceased, she was engaged in activity related to her primary assignment, the provision of health care to a patient. (The complaint clearly alleges that nurses are routinely in the chamber "to administer medicine or provide other necessary assistance to the patient"). The fact that the decedent was assigned to a different department or that she was using a specialized piece of medical equipment should not serve to undermine the broad workers' compensation immunity provided in section 440.11(1), Florida Statutes.
The operator of the hyperbaric chamber and Nurse Vause had a similar relationship as the welder and the laborer in Johnson, supra: They were both involved in the same project (rather than an unrelated project) the care of one particular patient. The director of the chamber was also involved in the same project. Furthermore, the appellant fails to explain how the administrator of the entire hospital could be involved in works unrelated to a nurse who works in that same hospital. Each individual defendant was assigned to duties related to the purpose and function of decedent's job: The provision of health care to patients of the medical center. The facts alleged in the complaint establish this relationship. The trial court, therefore, could have correctly dismissed the complaint against BMC because the court could have found that the employees were not engaged in unrelated works.
We next address those counts brought directly against nurse Vause's coemployees. Section 440.11(1), Florida Statutes (1991), extends immunity to fellow employees, but states that "[s]uch fellow-employee immunity shall not be applicable to an employee who acts ... with willful and wanton disregard... or gross negligence," and such behavior results in injury to a fellow employee. We must assume that all allegations in the complaint are true, and we are obliged to draw all reasonable inferences in favor of the pleader. A claim need only contain a short and plain statement of the ultimate facts showing that the pleader is entitled to relief. Fla.R.Civ.P. 1.110(b)(2); Abruzzo v. Haller, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992). The battery, fraud, and conspiracy claims against individual defendants Bowman, Taylor, and Dr. Stringer contain the essential allegation of willfulness to survive dismissal. The defendants' arguments involve matters best left for summary judgment or trial.[3]
Appellant also asserts a claim against Dr. Stringer in his capacity as a doctor rather than a coemployee of the hospital. In pertinent part, the claim reads as follows:

COUNT X

MEDICAL NEGLIGENCE AGAINST DEFENDANT DOUGLAS L. STRINGER, M.D.
63. As a result of the risks and clear and present danger to JOYCE L. VAUSE, R.N., of contracting decompression sickness, known to Defendant STRINGER, he had a duty to diagnose and treat any such disease after JOYCE L. VAUSE, R.N., exited the hyperbaric chamber.
64. On July 21, 1991, JOYCE L. VAUSE, R.N., exhibited known signs and symptoms of decompression sickness caused by the conditions in the hyperbaric chamber during the 13-1/2 hours she spent in the chamber attending patient ROGER DART.
The complaint does not, however, state that Dr. Stringer saw the decedent after she emerged from the chamber, nor that he diagnosed or treated the decedent. Therefore, there is no factual allegation establishing any physician-patient relationship. It is argued that the cases of Pate v. Threlkel, 661 So.2d *264 278 (Fla.1995), and Werner v. Varner, Stafford and Seaman, P.A., 659 So.2d 1308 (Fla. 4th DCA 1995), stand for the proposition that privity between the plaintiff and physician is not always needed to establish liability. We do not believe, however, that either Pate or Werner would support an action for medical negligence absent a physician-patient relationship.
In Pate and Werner, the issue was whether in a situation where a doctor-patient relationship or privity existed, the duty under that relationship could be extended to a third party. In Werner, the court specifically recognized that the issue concerned liability to a third person, and recognized that such liability was extended in only very limited circumstances absent privity between the patient and the doctor. These circumstances are where the defendant's failure to properly diagnose or treat a patient in privity with the doctor resulted in harm to an identifiable third party. In the instant case, there is no allegation that Dr. Stringer was acting in his capacity as a doctor as to any party or endeavored to diagnose or treat any patient. Thus, the issue in the instant case, unlike Pate or Werner, is whether any doctor-patient relationship existed as to any party, not whether the benefits of such a relationship may be extended to a third party. Even if it is found that a third-party issue exists in this case, there is no showing of a special relationship which would result in extending liability absent privity. We do, however, agree that the plaintiff should be entitled to amend the complaint in order to determine whether a claim of medical negligence may be alleged based on the establishment of a doctor-patient relationship between Dr. Stringer and any party which may inure to the benefit of the deceased.
We, affirm the dismissal of the complaint against the defendant BMC, but reverse and remand the dismissal with prejudice against the individual defendants.
BARFIELD, C.J., and JOANOS, ALLEN, KAHN, WEBSTER, DAVIS, BENTON and VAN NORTWICK, JJ., concur.
MINER, J., concurring in part and dissenting in part with opinion with which ERVIN, MICKLE, LAWRENCE and PADOVANO, JJ., concur.
BOOTH, J., recused.
MINER, Judge, concurring in part and dissenting in part.
Inter alia, the majority holds that dismissal below with prejudice of the wrongful death complaint which is the subject of this appeal was improper "to the extent that it was based upon plaintiff's (appellant) having elected a workers' compensation remedy." I concur in this conclusion. Likewise, I agree that the battery, fraud and conspiracy claims made in the complaint against individual defendants Bowman, Taylor[4], Dr. Stringer and Panama City Neurosurgical Associates, Dr. Stringer's professional association, contain allegations sufficient to survive dismissal of those counts. However, for the reasons that follow, I respectfully dissent from the reasoning and conclusions reached by the majority *265 with respect to the medical negligence claim against Dr. Stringer and the claim against Bay Medical Center based on the so-called "unrelated works" exception to workers' compensation immunity contained in section 440.11(1), Florida Statutes. I will first address the medical negligence claim against Dr. Stringer.

MEDICAL NEGLIGENCE CLAIM AGAINST DR. STRINGER
The majority has concluded to reverse the dismissal of the medical negligence claim against Dr. Stringer to permit appellant, Harley Vause, to re-plead a state of facts, if he can, showing privity between the doctor and Nurse Vause. In my view, the allegations of that portion of the dismissed complaint were sufficient to establish a duty owed by Dr. Stringer to Nurse Vause and a breach of that duty which resulted in Nurse Vause's death.
In 1995, the Florida Supreme Court took occasion to emphasize the provisions of section 766.102, Florida Statutes (1989) defining the legal duty owed by a health care provider in a medical malpractice case. See Pate v. Threlkel, 661 So.2d 278 (Fla.1995). In that case, the Supreme Court discussed the provision of the cited statutory section defining the legal duty owed by health care providers in a medical negligence case. With respect to the question of to whom the duty to warn of the nature of the risk may run, the court concluded that an absence of privity does not necessarily foreclose liability if a duty of care is otherwise established and that "where the prevailing standard of care creates a duty that is obviously for the benefit of certain identified third parties and the physician knows of the existence of those third parties, then the physician's duty runs to those third parties." (Emphasis added.)
The majority opinion expresses the view, incorrectly I believe, that Pate does not support an action for medical negligence. The opinion states that "[t]he issue is whether any doctor/patient relationship existed, not whether the benefits of such a relationship may be extended to a third party." As to this issue, the majority opinion concludes: "Even if it is found that a third-party issue exists in this case, there is no showing of special circumstances which would result in extending liability absent privity." In my view, aside from the fact that this case presents a textbook example of such circumstances, unlike the majority, I read nothing in Pate requiring that special circumstances exist before "extending liability absent privity." However, if special circumstances are required, the general allegations and claims seem to me more than sufficient to plead their existence. Among these allegations are that (1) Dr. Stringer, along with other defendants, had actual knowledge that there was no competent technical staff in charge of the hyperbaric program at BMC, (2) the defendants had actual knowledge that the continued operation of the chamber under those circumstances was substantially certain to cause grave illness or death to persons inside it, and (3) notwithstanding such knowledge, it was alleged that the defendants failed and refused to warn the plaintiff's decedent or other employees of the grave risk and clear and present danger attendant to operation of the hyperbaric chamber.
It was further alleged that Dr. Stringer, having such knowledge, admitted patient Roger Dart to the hyperbaric chamber to be attended by Nurse Vause and that Dr. Stringer had exclusive control over the procedures and conditions within the chamber. In detailing the allegations of Dr. Stringer's knowledge of the dangerous conditions surrounding the operation of the hyperbaric chamber, the complaint also alleged that Stringer provided an affidavit to the State of Florida in an unrelated proceeding stating that he and other doctors were being placed in a difficult position in managing patients inside the chamber because there was no experienced technical director there, commenting, as a result thereof, that the hospital had "placed itself at a significant medicallegal risk."
The referenced affidavit, dated some 3 months before Nurse Vause's death, also indicated that he (Dr. Stringer) had discussed his concerns with Mr. Gary Muller, then BMC's administrator, and that he told Muller that "the hyperbaric chamber is a very complex functioning unit and requires a high *266 level of expertise." Elsewhere in the affidavit, Dr. Stringer stated: "I would like to convey, as strongly as possible, my concern regarding the lack of technical expertise in the hyperbaric chamber at Bay Medical Center."[5] Despite his actual knowledge of the danger associated with using the hyperbaric chamber when it was being operated by persons who lacked technical expertise at the wheel, so to speak, it is alleged that Dr. Stringer admitted Roger Dart to the chamber with Nurse Vause in attendance thereby placing both patient and nurse in harm's way. Through no fault of hers, Nurse Vause did not survive this encounter. Thus, I do not think it can be argued persuasively that a scenario more fraught with "special circumstances" could exist which would justify "extending liability absent privity."
Applying the rule in Pate to the allegations in the complaint, it is clear that the statutory duty that was created was for the benefit of a certain identified third party (Nurse Vause), whom Dr. Stringer knew. As a result, Dr. Stringer's plain and clear duty to Nurse Vause was apparent. To say that this duty was breached under the circumstances appears to me to be an understatement.
The Pate rule was reiterated by this court in White v. Whiddon, 670 So.2d 131 (Fla. 1st DCA 1996)(on rehearing and clarification), wherein we reversed summary judgment in favor of the manufacturer of a defective screen placed in a police patrol car through which a detainee had slipped his handcuffed hand, taken a deputy's shotgun from the rack and killed himself. In response to the defendant's argument that the decedent was not within the zone of risk created by the defendant's conduct, the court answered, citing Pate, that insofar as the cage was designed to protect detainees as well as officers, they were both within the foreseeable zone of risk and the duty of care extends to detainees as well as officers.
To conclude as to this issue, then, I think it clear beyond peradventure that the medical malpractice statute created a statutory duty which extended to Nurse Vause, because Dr. Stringer's conduct at the very least placed her within a foreseeable zone of risk; therefore, it was immaterial whether the defendant could foresee the specific injury that actually occurred, although such was the probable if not an inevitable consequence of continuing to operate Bay Medical Center's hyperbaric chamber without persons trained in its use.
For the foregoing reasons, I would find that the medical negligence complaint against Dr. Stringer can go forward without alteration as to the allegations thereof.

THE PRIMARILY ASSIGNED TO UNRELATED WORKS ISSUE
Prior to 1978, the exclusivity provisions of chapter 440 did not apply to an employee who negligently injured a co-employee. As a result, the injured employee had a common law right of action for damages against his negligent co-employee. See Frantz v. McBee, 77 So.2d 796 (Fla.1955). In Frantz, the Supreme Court stated that in the absence of a legislative mandate to the contrary, fellow employees were to be treated as third-party tort-feasors within the context of the workers' compensation law.
In 1978, the legislature amended section 440.11(1)[6] which amendment had the effect of protecting co-employees from liability for acts of simple negligence. See generally, Eller v. Shova, 630 So.2d 537 (Fla.1993). However, the referenced amendment did not immunize co-employees from common law liability for acts of gross negligence. Additionally, the legislature did not extend chapter 440 immunity to a worker who negligently injured a co-worker when the two were primarily assigned to unrelated works within their employment.
*267 For purposes of this analysis, I think it important to discuss first, without examining the effect of the two exceptions to the broad grant of immunity, just what was accomplished by extending the same immunity to fellow employees that had previously been accorded to employers. Before the amendment to section 440.11(1) was added, a worker injured by a co-employee had the right to institute a common law action for damages against the negligent coemployee in addition to his workers' compensation remedy against his employer. Thus, it was immaterial to his cause of action against the active tort-feasor whether the injury was one that arose out of and in the course and scope of employment. It was also immaterial regarding the type of work to which the two employees had been assigned, or the degree of negligence by the tort feasor. The 1978 amendment, as stated, made a substantial change in the worker's right to pursue a common-law action. For example, in a case, in which two workers were employed on the same construction site carrying out the same construction activities, a common-law action was precluded by the tortfeasor's grant of immunity. In crafting the amendment, it seems to me that the legislature necessarily considered the relationship between the two employees, because it is obvious that it intended to modify a cause of action that had long existed in favor of the injured worker.
This new grant of immunity was not, however, unlimited. The 1978 amendment recognized, as stated, two exceptions to the act's preclusive effect: Gross negligence and that involving the worker's primary assignment to unrelated works. As to the latter exception, it is instructive to examine the specific language used by the legislature. The immunity is not "applicable when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment." (Emphasis added.) Thus, the injured employee retains his common-law action in tort despite the fact that both he and the active tort-feasors are operating in the furtherance of the employer's business, meaning that both are within the course and scope of their employment. The remainder of the sentence creating the exception, i.e., that they are both primarily assigned to unrelated works within the employment, does not mean that at the time of the accident the injured worker must be assigned dual employment roles or that his work assignment at the time of injury must be unrelated to his primary assigned employment.
Given the evident purpose behind the creation of the above language ... to add an exception to the grant of immunity ... it is necessary to focus one's attention on the employment relationship that exists between the injured worker and the co-employee causing the injury. Otherwise stated, if each was assigned work which was primarily unrelated to the other's employment, the injured worker's common-law action remained unaffected by the legislative grant of immunity. On the other hand, if the primarily assigned employment activities of both workers were substantially similar, the immunity provision applied and the injured employee was required to rely solely on his workers' compensation remedy. Prior case law, without explicitly articulating the effect of the amendment, appears to have reached a result consistent with what is, I believe, the evident legislative intent.
Precisely what it was that impelled the legislature to add the primary work assignment exception to workers' compensation immunity is not readily apparent, as this exception is unique to Florida's workers' compensation scheme. Thus we have no experience from other states on which to draw nor does an archival search shed any light on legislative purpose. One possible, and I believe eminently reasonable construction of the provision at issue, is that the legislature intended to remove workers' compensation immunity as a disincentive to employers assigning employees, primarily assigned to full-time duties in a particular area of employment, occasional, non-routine duties because of a legislative assumption that the danger of injury might be increased if workers were expected to perform such tasks on a relatively infrequent basis.
But, whatever motivated the legislature to carve out this exception, I believe the legislative expression is clear: workers' compensation *268 immunity is not afforded to a worker who negligently injures a co-worker when the latter is carrying out an assignment which is unrelated to the duties to which the injured worker is/was primarily assigned. (Emphasis added.) Moreover, I believe that by its use of the words "primarily assigned", the legislature must have contemplated the possibility, if not the probability, that an employee might be called upon to perform more than one task within the same employment and that if such an employee is injured by a co-worker's negligence while performing a secondary assignment, the injured worker has the right to bring an action at law for any resulting damages. E.g., Holmes County School Board v. Duffell, 651 So.2d 1176 (Fla.1995) (Primary work of an employee as custodian of the employer was unrelated to the task the employee was performing at the time of injury, which was assisting in the evacuation of students from a school bus during an emergency drill.) If the majority's analysis is correct, the injured plaintiff, Duffell, would have been precluded from bringing a personal injury action against the School Board because, at the time of his injury while assisting in a school bus evacuation drill, he was engaged in an activity related to his primary assignment, serving in the general employment of the School Board, notwithstanding that he was hired to perform custodial services.
Likewise, in State Dep't of Corrections v. Koch, 582 So.2d 5 (Fla. 1st DCA 1991), the personal representative of the DOT employee killed due to the negligence of a DOC employee when both were working on the same construction project would have been foreclosed from instituting suit, notwithstanding that both "were co-employees assigned primarily to unrelated works." Yet the complaints in both Duffell and Koch were held to have stated a common law cause of action.
I therefore consider the following reasoning in the majority opinion at page 263 to be completely at odds with the purpose behind the creation of the unrelated works exception: That Nurse Vause was necessarily involved in work at the time of her fatal injury as that performed by the operator of the hyperbaric chamber, because both were involved in the furnishing of care to one particular patient, therefore, the fact that she was primarily assigned to a different department from hyperbaric chamber operating personnel is immaterial. The majority's conclusion overlooks the explicit legislative recognition that employees can be carrying out their work assignments "in the furtherance of their employer's business," and yet a cause of action can nonetheless be maintained by the injured worker, if his assigned work activity is primarily unrelated to that of the employee responsible for the injury.
Even if the allegations in the complaint can be so interpreted as supporting a conclusion that the operators of the hyperbaric chamber and Nurse Vause, at the time of her injury, were extending care to a patient, they furnish no support for a decision that the employee's activities were related, pursuant to the terms of the statute. (Emphasis added.) The statute uses the explicit language that the workers shall be "assigned primarily to unrelated work within ... employment". It says nothing about the primacy of the assignment at the time of injury. The complaint specifically recites that since 1984, Nurse Vause had been "assigned primarily to fulltime duties in the Obstetrical Department"; that "the Obstetric Department is unrelated to the Hyperbaric Medicine Department"; and that "since 1988, Nurse Vause had worked part-time as an on-call nurse in the... Hyperbaric Department." Thus, the allegations of the complaint fully comply with the unrelated works exception of the statute and, in my view did, in fact, state a cause of action against Bay Medical Center.
It therefore seems to me appropriate to note that the statutory language employed in the unrelated works exception does not provide that at the time of the injury to the coworker, the injured party and the negligent party were primarily assigned to unrelated works. (Emphasis added.) Otherwise stated, whether the injured worker and the negligent worker were performing related or unrelated work at the time of the injury should not be the focus of the inquiry. The express, operative words of the statute deal with the primary assignment of these workers, not the activities they were carrying out *269 at the time of a worker's injury. (Emphasis added.)
It is not disputed that Nurse Vause was the only one of the co-workers involved in this case who was assigned to perform nursing services. Her co-worker, Patrick Bowman, a retired Navy master diver, was the operator/tender of the hyperbaric chamber at BMC. Nurse Vause's co-worker, John Taylor, was the Administrator at Bay Medical Center at the time of the injury that resulted in Ms. Vause's death. Co-worker, Dr. Stringer, was the Co-Medical Director of the Hyperbaric Department at BMC at the time of the instant accident. It seems to me incontestable that, as between these co-workers, each was primarily assigned to unrelated works in the furtherance of BMC's business. Only Nurse Vause's occasional nursing assignment in the hyperbaric chamber had the potential to be life threatening. Only Nurse Vause's on-call nursing assignment required her to undergo essentially the same treatment as the patient whom she was directed to attend inside the hyperbaric chamber.
In terms of relatedness, it seems to me that providing nursing service in a life threatening artificial environment is light-years away from overseeing the turning of dials and gauges that control pressure and life preserving gasses in that environment (to perhaps oversimplify Bowman's duties) or establishing protocols for operation of and admitting medical patients to that environment or administering the overall affairs of the hospital that houses that environment.
At the very least, I think there can be little doubt that Nurse Vause was primarily assigned to provide nursing services to the mothers and newborns in the obstetrical ward at BMC and secondarily on an as needed basis to assist patients in BMC's hyperbaric chamber. The complaint below so alleges and we are required to accept these allegations as true for the purpose of determining whether the trial court correctly dismissed plaintiff's complaint. Yet, the majority concludes, as a matter of law, that such was not the case. In my view, the majority opinion ignores both the specific allegations of the complaint as well as the express provisions of the statute by concluding on page 263: "At the time of injury to the deceased, she was engaged in an activity related to her primary assignment, the provision of healthcare to a patient.... The fact that the decedent was assigned to a different department or that she was using a specialized piece of medical equipment should not serve to undermine the broad workers' compensation immunity provided in section 440.11(1), Florida Statutes." In analyzing this language, one could, as does the majority, conclude that because Nurse Vause was engaged in the provision of healthcare to a patient, she was thereby acting in furtherance of her employer's business and it is therefore immaterial, as a matter of law, whether her primary assignment in her employment was within the obstetrical ward or in the Hyperbaric Department because her work, the providing of healthcare to a patient, was necessarily related to that of her co-workers. This conclusion, in my judgment, is at odds with the express language of the statute which clearly contemplates that fellow employees may be operating in furtherance of the employer's business at the time of the injury; therefore, section 440.11(1) immunity is inapplicable if these employees are assigned temporary work unrelated to their primary assignment. Under the construction of the statute adopted in the majority opinion, it is just this side of impossible for me to conceive of any situation in which the unrelated works exception to the immunity provided by the statute could ever apply.
From a procedural perspective, one of the most instructive cases relating to the issue of unrelated works is Lake v. Ramsay, 566 So.2d 845 (Fla. 4th DCA 1990), which involved the question of whether the exclusive remedy provisions of section 440.11(1) barred the action of an injured maintenance employee for damages resulting from the defendant's alleged negligence in the construction of a ceiling of a condominium garage. The 4th District, correctly, in my view, reversed the trial judge's entry of summary judgment in favor of the defendant and in so doing observed that whether the plaintiff, a maintenance employee, or the defendant, a construction supervisor, were co-employees involved in related works was a question of fact *270 not appropriate for summary judgment. It seems to me that if the related works issue is not appropriate for summary judgment, it certainly cannot be decided in a factually undeveloped vacuum, as in this case, where we are dealing simply with a motion to dismiss.
To sum up as to the "unrelated works" exception, I believe that the complaint filed below stated a cause of action against Bay Medical Center on the theory that at the time of the injury that led to her death, Joyce Vause was assigned to perform a task unrelated to her primary assignment and unrelated to the primary assignments of the co-workers whose alleged gross negligence caused her untimely demise.
I would therefore reverse as to this issue and remand for further proceedings.
NOTES
[1] Panama City Neurological Associates (PCNA), the professional service corporation that employs Dr. Stringer, was also named as a defendant. The allegations against PCNA are virtually identical to those asserted against Dr. Stringer.
[2] Cases from other jurisdictions also provide no guidance as to what constitutes unrelated works. As noted in Larson Workers' Compensation, § 72.21 (Supp.1995), the Florida unrelated works exception is "unique."
[3] We would note that the administrator, Taylor, acting as a corporate officer may be entitled to immunity from suit in that capacity. Section 440.11(1), Florida Statutes (1991), provides in pertinent part: "The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his duties acts in a managerial or policy making capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policy making duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082."
[4] At the time of the accident that resulted in Nurse Vause's death, defendant, John Taylor, was Bay Medical Center's administrator. Since section 440.11(1) provides that a supervisor acting in a managerial or policy making capacity is clothed with the same immunity enjoyed by his employer, Mr. Taylor's liability will depend on whether the facts adduced below support a cause of action against him for culpable negligence. See Eller v. Shova, 630 So.2d 537 (Fla.1993). Culpable negligence in a criminal context is condemned in section 784.05(2), Florida Statutes which provides that

One, through culpable negligence, who inflicts actual personal injury on another commits a misdemeanor of the first degree punishable by a definite term of imprisonment not to exceed 1 year.
Paraphrasing the definition of culpable negligence approved by the Florida Supreme Court, culpable negligence is "gross and flagrant" negligence. It is conduct "showing reckless disregard for human life" or the type of indifference to the rights of others as is equivalent to an intentional violation of those rights. (Standard Jury Instructions In Criminal Cases, p. 89)
That portion of section 440.11(1) which affords immunity from common-law tort liability to supervisory employees such as Mr. Taylor is not applicable if his conduct amounts to a violation of the law, whether or not charged, the penalty for which violation is more than 60 days imprisonment.
Whether appellant's proofs on remand will support a finding of culpable negligence on Mr. Taylor's part must abide another day and setting.
[5] Paragraph 18 of the complaint filed below alleges that defendant, Patrick Bowman, on July 17, 1991, just four days before Joyce Vause's death, echoing Dr. Stringer's earlier warning, notified defendant, BMC's Administrator, Taylor of the continuing problems in staffing the Hyperbaric Department at BMC with persons with the technical expertise to operate the hyperbaric chamber. In this letter, he implored Taylor for a "commitment to either support the Hyperbaric Department or close us down all together...."
[6] Chapter 78-300, Sec. 2, Laws of Florida.