732 So.2d 342 (1998)
Debra Anne TURNER, as Personal Representative of the Estate of Thomas Paul Turner III, Deceased, and James Creighton and Lynn Creighton, Appellants,
v.
PCR, INC., a Florida corporation, Appellee.
No. 97-2610.
District Court of Appeal of Florida, First District.
November 4, 1998.
*343 Karen Cohen, Miami and Jack J. Fine, Gainesville, for Appellants.
Michael D. Whalen of Martin, Ade, Birchfield & Mickler, P.A., Jacksonville, for Appellee.
LAWRENCE, Judge.
Paul Turner (Turner) was killed and James Creighton (Creighton) was seriously injured in a November 22, 1991 explosion at the chemical plant of PCR, Incorporated (PCR), in Alachua County. The trial judge granted summary judgment for PCR based on workers' compensation immunity,[1] despite Creighton's claim that he was engaged in an unrelated work, and despite the claim of Debra Anne Turner, the personal representative of Turner's estate (estate), that PCR acted intentionally. The estate, Creighton, and Creighton's wife Lynn, appeal. We affirm.

Intent
A claimant, in order to overcome workers' compensation immunity, must show that the employer exhibited "a deliberate intent to injure," or must show that the employer engaged "in conduct which is substantially certain to result in injury or death." Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882, 883 (Fla.1986). We agree with the trial judge that the undisputed material facts establish the applicability of workers' compensation immunity. The facts are these.
PCR was under contract with DuPont to perform research and development services in connection with a series of chemical compounds that DuPont was evaluating as a replacement for Freon 113. One of those compounds was F-pentene-2, which is produced by combining tetrafluoroethylene (TFE) with hexafluoropropene (HFP), in the presence of a promoter, aluminum chloride, and heat under autogenous pressure. Turner and Creighton were technicians at PCR's plant. Turner, on the day of the explosion, was assigned the task of inverting a 200-gallon canister containing chemicals. Creighton was employed on the same project, but assigned to the catalog department. Turner, unable to manually invert the heavy unheated canister alone, enlisted Creighton, who was walking through Turner's work area, to help lift the canister. The canister exploded during the attempt to invert it.
PCR, during the sixteen-month period preceding the fatal explosion, made thirty-six runs of the F-pentene-2 process, including six 200-gallon runs, the same size run as that involved in the fatal explosion. PCR previously had never experienced a reaction of the chemicals at issue in the instant case until the chemicals were heated to at least 50 degrees centigrade (122 degrees Fahrenheit); even then only a mild reaction occurred at that temperature. Creighton and the estate allege that prior to the fatal explosion, PCR experienced three uncontrolled explosions/deflagrations involving "one or more of these materials or chemically similar material." It is undisputed however that no explosion had ever occurred at PCR involving the same combination of chemicals, under the same conditions, as the fatal explosion at issue. We therefore agree with the trial judge that the record fails to show the necessary intent or conduct to overcome PCR's immunity.
*344 The record nevertheless contains the affidavits of two chemical experts expressing the opinion that based upon their review of documents recounting the circumstances and history of the fatal explosion, PCR exhibited a deliberate intent to engage in conduct which was substantially certain to result in injury or death. The experts' affidavits thus distinguish this case from cases like Clark v. Gumby's Pizza Systems, Inc., 674 So.2d 902 (Fla. 1st DCA 1996), and General Motors Acceptance Corp. v. David, 632 So.2d 123 (Fla. 1st DCA 1994), where the records merely contained the plaintiffs' allegations of the requisite intent or conduct.
We are of the view that the expert opinions are insufficient to create a material issue of fact when no issue of material fact otherwise existed with respect to PCR's statutory immunity. An employee has a heavy burden in overcoming the employer's workers' compensation immunity, when viewed in light of the Florida Supreme Court's strict interpretation of the statute. The supreme court explains the intent required to overcome workers' compensation immunity:
A strong probability is different from substantial certainty and cannot constitute intentional wrongdoing. The complaint involved here does not allege such virtual certainty on the part of Shenandoah; rather, it speaks only in terms of probable injury. Such an allegation is insufficient in light of the strict interpretation that must be given to the definition of intentional tort. Such a strict reading is necessary because nearly every accident, injury, and sickness occurring at the workplace results from someone intentionally engaging in some triggering action. In the words of Prosser,
[T]he mere knowledge and appreciation of a risksomething short of substantial certaintyis not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but is not an intentional wrong.

Fisher v. Shenandoah, 498 So.2d at 883-84 (citations and footnote omitted) (emphasis added). To hold otherwise would allow the mere conclusory opinion of an expert witness in almost any case to create a question of fact for the jury on the issue of an employer's workers' compensation immunitya result unintended by the plain reading of the statute.
The issue nevertheless is one of great public importance and we therefore certify the following question to the Florida Supreme Court:
IS AN EXPERT'S AFFIDAVIT, EXPRESSING THE OPINION THAT AN EMPLOYER EXHIBITED A DELIBERATE INTENT TO INJURE OR ENGAGED IN CONDUCT SUBSTANTIALLY CERTAIN TO RESULT IN INJURY OR DEATH TO AN EMPLOYEE, SUFFICIENT TO CONSTITUTE A FACTUAL DISPUTE, THUS PRECLUDING SUMMARY JUDGMENT ON THE ISSUE OF WORKERS' COMPENSATION IMMUNITY?

Unrelated Works
Creighton also argues that he and Turner were engaged in "unrelated works" at the time he was injured, enabling him to sue for negligence without regard to workers' compensation immunity. See § 440.11(1), Fla. Stat. (1997) ("nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works"). Florida's "unrelated works" exception is "unique." Vause v. Bay Med. Center, 687 So.2d 258, 262 n. 2 (Fla. 1st DCA 1996) (citing Arthur Larsen & Lex K. Larsen, Larsen's Workers' Compensation Law § 72.21 (Supp. 1995)), review denied, 695 So.2d 703 (Fla. 1997). This court, in Vause, determined that a nurse who worked part time in the *345 hyperbaric chamber of a hospital was not engaged in an unrelated work when she died within two hours of being in the chamber, despite that the nurse previously worked full time as an obstetrical nurse. We, in Vause, noted with approval the holdings that a "laborer" and a welder on the same construction site were not engaged in unrelated works, id. at 263, but a school custodian injured while unloading children from a school bus indeed was engaged in an unrelated work. Id. at 262. We observed that "while employees may have different duties as related to the same project," this does not mean the employees are involved in "unrelated works." Id. (citing cases).
Creighton argues that his negligence suit is permitted despite workers' compensation immunity because he was engaged in work in the catalog department[2] of PCR, unrelated to the compound-preparation work Turner was engaged in when Turner was killed. The trial judge, by granting summary judgment for PCR, determined as a matter of law that Creighton and Turner were not engaged in unrelated works. While Kremer, one of PCR's supervising chemists, testified on deposition that he did not know what Creighton was doing at the accident site (Creighton himself has no memory of the accident), the record shows[3] that both Creighton and Turner were technicians at PCR; that Creighton worked in the catalog section and Turner worked in the research and development section; that technicians in both sections worked cooperatively in preparing compounds; that technicians, in a "team effort," worked with the same equipment; and that the type of cylinder that exploded in the fatal accident was used by technicians in both sectionsthe cylinders were "all over the plant." We consequently agree with the trial judge that Creighton and Turner had "different duties as related to the same project" at PCR, and hence were engaged in related, rather than unrelated, works. Vause.
We accordingly affirm the judgment of the trial court, and certify a question to the Florida Supreme Court.
ERVIN and JOANOS, JJ., concur.
NOTES
[1] See § 440.11(1), Fla. Stat. (1991).
[2] The catalog department produced "recipe" cards, apparently records of chemical reactions enabling the reactions, and ergo compounds, to be duplicated. The catalog department performed "runs" of compound-producing reactions, including runs for the compound at issue in this case, F-pentene-2.
[3] The deposition testimony of PCR chemist Brimeyer, and the affidavit of PCR chemist Alty.