928 So.2d 1163 (2006)
Julio ARAVENA, etc., Petitioner,
v.
MIAMI-DADE COUNTY, Respondent.
No. SC04-2349.
Supreme Court of Florida.
April 6, 2006.
*1164 Martin E. Leach of Feiler, Leach and McCarron, PL, Coral Gables, Florida, for Petitioner.
Robert A. Ginsburg, Miami-Dade County Attorney, Jeffrey P. Ehrlich, and Susan Torres, Assistant County Attorneys, Miami, Florida, for Respondent.
Melinda L. McNichols, Miami, Florida, on behalf of the School Board of Miami-Dade County, Florida; and Margaret E. Sojourner of Langston, Hess, Bolton, Znosko and Shepard, Maitland, Florida, on behalf of Florida Defense Lawyers Association, for Amici Curiae.
PARIENTE, C.J.
We have for review the Third District Court of Appeal's decision in Miami-Dade County v. Aravena, 886 So.2d 303 (Fla. 3d DCA 2004), which expressly and directly conflicts with the Fourth District Court of Appeal's decision in Palm Beach County v. Kelly, 810 So.2d 560 (Fla. 4th DCA 2002). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The conflict issue is whether county employees who work at different physical locations for different departments, have different supervisors, *1165 and perform different duties and functions in their primary assignments fall within the unrelated works exception to workers' compensation immunity. We answer this question in the affirmative and conclude that the unrelated works exception was intended to cover this precise set of circumstances. We hold that although no bright-line rule governs, the unrelated works exception has both locational and operational components and requires consideration of several factors, which we set forth herein.

FACTS AND PROCEDURAL HISTORY
Miami-Dade County is the largest of Florida's sixty-seven counties, and its government comprises forty-five departments and approximately 30,000 employees. Gregoria Vega was employed by Miami-Dade County's Police Department as a part-time elementary school crossing guard. Her job was to help children cross the street at the intersection of Southwest 16th Street and 62nd Avenue. On October 24, 2001, the traffic lights at the intersection were not operating properly. As a result, two vehicles collided in the intersection and one veered off the road, killing Vega. Vega was standing on the swale of the road at the time of the accident, which occurred at approximately 7:20 a.m.
Julio Aravena, Vega's husband, initiated a wrongful death case against the county, alleging that the accident was caused in part by the negligence of the county's traffic signal repair personnel who failed to repair the malfunctioning traffic lights at the intersection. The traffic signal repair personnel worked for the maintenance section of the Miami-Dade County Public Works Department, which is located at 3655 Southwest 25th Terrace. The maintenance section receives information from the traffic control section of the Public Works Department, which is responsible for all traffic lights in Miami-Dade County and is located at 7100 Northwest 36th Street.
In response to the complaint, the county claimed that Aravena's action was barred by the portion of Florida's Workers' Compensation Law that accords tort immunity to coemployees "acting in furtherance of the employer's business" and that the exception for employees "assigned primarily to unrelated works" did not apply. § 440.11(1), Fla. Stat. (2001). The county filed a motion for summary judgment, which was denied. After a jury verdict in favor of Aravena, the county filed a motion for judgment notwithstanding the verdict based on workers' compensation immunity. The trial court denied the county's motion and entered judgment for Aravena. The parties did not dispute the facts relevant to the determination of the issue of workers' compensation immunity and this issue was never argued to the jury.
The county appealed. The Third District reversed the trial court's order denying the county's motion for judgment notwithstanding the verdict and remanded for entry of judgment for the county based on workers' compensation immunity. See Aravena, 886 So.2d at 305. Noting this Court's recent decision in Taylor v. School Board of Brevard County, 888 So.2d 1 (Fla.2004), the Third District concluded that Vega and the county's traffic signal repair personnel were not assigned primarily to unrelated works. See Aravena, 886 So.2d at 304-05. The district court explained:
[I]t cannot be said that these co-employees worked on entirely different projects. Nor can it be clearly demonstrated that the work of the County's traffic signal repair personnel, whose job was to regulate vehicular and pedestrian traffic, was unrelated to the work of the school crossing guard, whose job also was to regulate vehicular and pedestrian *1166 traffic at the same intersection. To hold otherwise would contravene the overall legislative intent of the workers' compensation law, which "was meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer." Taylor, 888 So.2d at 4.
Aravena, 886 So.2d at 305.

ANALYSIS
The issue before the Court is whether county employees who work at different physical locations for different departments, have different supervisors, and perform different duties and functions in their primary assignments fall within the exception to the general immunity provision of Florida's Workers' Compensation Law, which provides that immunity is not available in cases involving coemployees that are "assigned primarily to unrelated works." § 440.11(1). Both the trial court and district court decided this issue as a matter of law based on the undisputed facts. Thus, our review is de novo. See generally Blanton v. City of Pinellas Park, 887 So.2d 1224, 1226 (Fla.2004).

Conflict between Aravena and Kelly

Initially, we address whether an express and direct conflict exists between the decision reached in this case and the decision reached by the Fourth District in Kelly. The county asserts that there is no conflict. We disagree.
In Kelly, the Fourth District held that two coemployees, who began and ended their work days at the same general location but who worked at different locations and performed different job duties, were assigned primarily to unrelated works. See 810 So.2d at 562. One employee, Kevin Kelly, worked as a maintenance equipment operator for the maintenance division at Palm Beach International Airport. Kelly began and ended his day at 3700 Belvedere Road, Building G. See id. The other employee, Rostant John, was an equipment mechanic for Palm Beach County's Fleet Management Division, who usually worked at the county's shell rock pit in Boca Raton. See id. John began and ended his day at 3700 Belvedere Road, Building D.
Similar to the coemployees in Kelly, Vega and the traffic signal repair personnel worked at different locations. Vega worked for the Miami-Dade County Police Department and was assigned primarily to work at a specific location as a school crossing guard. The traffic signal repair personnel were employees of the Miami-Dade County Public Works Department and were assigned primarily to maintain the traffic lights at the numerous intersections throughout Miami-Dade County. The Third District's conclusion that the coemployees had jobs involving the regulation of vehicular and pedestrian traffic in effect defines "related works" as any jobs that are generally related. The same could be said for the coemployees in Kelly who were both engaged in the generally related jobs of maintenance.
Further, we note that there was a greater connection between the coemployees in Kelly than exists in this case. Unlike Vega and the traffic signal repair personnel, the coemployees in Kelly began and ended their days at the same location. The facts of this case therefore present a stronger argument for concluding that Vega and the traffic signal repair personnel were assigned primarily to unrelated works. The holdings of Aravena and Kelly are irreconcilable, which is one of the tests for conflict jurisdiction. See Crossley v. State, 596 So.2d 447, 449 (Fla.1992) (concluding that because the court below "reached the opposite result on controlling facts which, if not virtually identical, more *1167 strongly dictated" the result reached by the alleged conflict case, a conflict of decisions existed that warranted accepting jurisdiction).

Florida's Workers' Compensation Law
Having concluded that an express and direct conflict exists between this case and Kelly, we next review Florida's Workers' Compensation Law, chapter 440, Florida Statutes. The Workers' Compensation Law is a "comprehensive scheme ... that generally provides workers' benefits without proof of fault and employers immunity from tort actions based upon the same work place incident." Taylor, 888 So.2d at 2. The Legislature has declared its intent that
the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer. It is the specific intent of the Legislature that workers' compensation cases shall be decided on their merits. The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike. In addition, it is the intent of the Legislature that the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer. Additionally, the Legislature hereby declares that disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer. It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker.
§ 440.015, Fla. Stat. (2001).
Section 440.09(1), Florida Statutes (2001), provides that "[t]he employer shall pay compensation or furnish benefits ... if the employee suffers an accidental injury or death arising out of work performed in the course and the scope of employment." (Emphasis supplied.) Section 440.10, Florida Statutes (2001), sets forth the employer's liability for compensation and section 440.11(1) provides that this liability is "exclusive and in place of all other liability" as to third-party tortfeasors and employees, save for certain legislatively created exceptions.
The immunity afforded to the employer under section 440.11(1) also extends to "each employee of the employer when such employee is acting in furtherance of the employer's business." However, this coemployee immunity does not apply
to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, ... [or] to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.
§ 440.11(1) (emphasis supplied). Thus, if one of these exceptions applies, the injured employee can seek remuneration from a coemployee despite the fact that the injury *1168 arose out of the scope of employment.[1]
In cases where the employer is a governmental entity such as a county, the coemployee tortfeasor is immune from personal liability for torts under section 768.28(9)(a), Florida Statutes (2005), which requires that any civil action for the employee's negligence be maintained against the governmental entity. Under this provision, any negligence claim arising under the unrelated works exception against a public coemployee must be brought against the governmental entity employer. See Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176, 1179 (Fla.1995); see also Taylor, 888 So.2d at 7 (Lewis, J., concurring in result only) (explaining that a public employee "may seek recovery from the otherwise immune employer, because the employer is not being sued in its capacity as employer, but rather is being sued as a surrogate defendant based on the negligent acts of the public co-employee").

Case Law Interpreting the Unrelated Works Exception
The scope of the unrelated works exception has been addressed by all of the district courts of appeal. See, e.g., Kelly, 810 So.2d at 561-62; Taylor v. Sch. Bd. of Broward County, 790 So.2d 1156, 1157-58 (Fla. 5th DCA 2001), approved, 888 So.2d 1, 6 (Fla.2004); Lopez v. Vilches, 734 So.2d 1095, 1096-98 (Fla. 2d DCA 1999), disapproved of by Taylor v. Sch. Bd. of Brevard County, 888 So.2d 1, 6 (Fla.2004); Dade County Sch. Bd. v. Laing, 731 So.2d 19, 20 (Fla. 3d DCA 1999); Vause v. Bay Med. Ctr., 687 So.2d 258, 261-63 (Fla. 1st DCA 1996). Prior to this Court's decision in Taylor, the district courts had been split as to the appropriate test for determining whether coemployees were assigned primarily to unrelated works. The First, Third, and Fifth District Courts of Appeal applied a broad "same project" test in determining whether coemployees were assigned primarily to unrelated works. See, e.g., Vause, 687 So.2d at 263 ("Each individual defendant was assigned to duties related to the purpose and function of decedent's job: The provision of health care to patients of the medical center."); Laing, 731 So.2d at 20 (concluding that the unrelated works exception did not apply because the coemployees "were both working on the same project, in the sense that they were co-employees providing education related services to students"); Taylor, 790 So.2d at 1157 (agreeing with the trial court's finding that the coemployees were not assigned primarily to unrelated works because "they had in common the provision of transportation services to Brevard County school children") (internal quotation marks omitted).
In contrast to the "same project" test, the Second District Court of Appeal in Lopez applied a narrower bright-line test that focused on the physical location of the coemployees and the scope of their duties. See 734 So.2d at 1097. The Fourth District has noted the two differing approaches of the other district courts, which it described as "(1) a `case-by-case approach,' which examines whether co-employees were engaged in the same project and were `part of a team,' and (2) a `bright-line' *1169 test based on the physical location where the employees were primarily assigned and the unity of their business purpose." Kelly, 810 So.2d at 562 (citation omitted). However, the Fourth District has declined to adopt either approach, concluding in the cases before it that the results were the same under either test. See id.; Sch. Bd. of Broward County v. Victorin, 767 So.2d 551, 554 (Fla. 4th DCA 2000).
In Taylor, this Court attempted to resolve a conflict between the Second District's decision in Lopez and the Fifth District's decision in Taylor. We considered whether a school bus driver and a school bus mechanic were assigned primarily to unrelated works. See Taylor, 888 So.2d at 2. After noting the Legislature's express "admonition that the worker's compensation law not be construed liberally in favor of the employee or the employer" and the Legislature's "mandate[ ] that the ordinary rules of statutory construction be invoked," the Court concluded that the unrelated works exception must be interpreted narrowly. Id. at 4-5. We then set forth the analysis to be used to determine whether the unrelated works exception applies in a given case. In doing so, we did not adopt either the case-by-case "same project" test or the bright-line test. Rather, we concluded "that the exception to this scheme for unrelated works should be applied only when it can clearly be demonstrated that a fellow employee whose actions caused the injury was engaged in works unrelated to the duties of the injured employee." Id. at 5 (emphasis supplied). We explained:
While we would like to be more precise in providing guidance to those initially charged with deciding disputes based upon this exception, we are limited by our lack of precise knowledge of the legislative intent behind the exception and the reality that we could not hope to contemplate the myriad of factual circumstances that may give rise to the issue.
Id. (emphasis supplied). Applying these principles, we held that the school bus driver and the school bus mechanic were not engaged in unrelated works because they "shared a common goal of providing safe transportation to the students." Id. at 6.
In reaching the decision in Taylor, we disapproved the Second District's decision in Lopez. See id. In Lopez, a funeral home worker was injured when the vehicle he was operating malfunctioned. See 734 So.2d at 1096. The funeral home worker filed suit against three coemployees, alleging that his injury was sustained as a result of their negligent maintenance of the vehicle. See id. The Second District held that the undisputed facts did not preclude the unrelated works exception and, thus, reversed the summary judgment entered in favor of the defendants. See id. at 1097. The Second District reasoned that "[t]he physical location of [the coemployees'] work appears to be separate and their specific purpose, general funeral home duties versus vehicle maintenance, appear distinct." Id. This Court disagreed and instead adopted the reasoning of the dissent in Lopez, which focused on the fact that all of the employees had duties related to the vehicle:
I disagree and would affirm the trial court's determination that the unrelated works exception to the exclusivity of workers' compensation benefits is not applicable to this situation. Lopez, Vilches, Brito and Kelly work for the same employer. All of them have some duties related to the van in question. Lopez drives the van to facilitate the moving of flowers from the chapel to the cemetery. The other employees use the *1170 van in their duties of maintaining and repairing the vehicles owned or leased by the employer. Under these circumstances, it cannot be said that the co-employees are engaged in unrelated works. See Abraham v. Dzafic, 666 So.2d 232 (Fla. 2d DCA 1995).
Taylor, 888 So.2d at 6 (emphasis supplied) (quoting Lopez, 734 So.2d at 1098) (Quince, Associate Judge, dissenting).

This Case
In this case, the Third District held that the unrelated works exception did not apply because
it cannot be said that [Vega and the traffic signal repair personnel] worked on entirely different projects. Nor can it be clearly demonstrated that the work of the County's traffic signal repair personnel, whose job was to regulate vehicular and pedestrian traffic, was unrelated to the work of the school crossing guard, whose job also was to regulate vehicular and pedestrian traffic at the same intersection.
Aravena, 886 So.2d at 305.
Although the Third District claimed to adhere to our recent pronouncement in Taylor, we conclude that the Third District's decision is inconsistent with the reasoning of Taylor. The Third District initially used the case-by-case, same project analysis despite the fact that we did not approve of this approach in Taylor.[2] Further, to comport with Taylor's holding that the exception applies only "when it can clearly be demonstrated that a fellow employee whose actions caused the injury was engaged in works unrelated to the duties of the injured employee," the Third District resorted to an overly broad definition of the coemployees' jobs as "regulat[ing] vehicular and pedestrian traffic" without considering other factors.
It is true that in Taylor this Court broadly categorized the duties of the school bus driver and the school bus mechanic by stating that these coemployees shared a more general "goal of providing safe transportation to the students." 888 So.2d at 6. However, in that case both the school bus driver and the school bus mechanic had duties relating to the same equipment  the school bus's wheelchair lift. See id. at 4. In addition, both the school bus driver and the school bus mechanic worked out of the same facility. See id. Similarly, this Court's conclusion in Lopez that the coemployees were not assigned primarily to unrelated works was supported by the fact that each had duties related to the use of the funeral home vehicle. See 734 So.2d at 1096. As in Taylor, the duties of the coemployees in Lopez were linked by the connection to the very equipment that caused the injury.
In this case, unlike the coemployees in Taylor, Vega and the traffic signal repair personnel did not work out of the same facility or with the same equipment. Therefore, the Third District's reliance solely on a broad definition of the coemployees' duties, without regard to any other factors, to conclude that the employees were not engaged primarily in unrelated works is not supported by Taylor.
*1171 The Third District's reasoning is also inconsistent with that court's most recent decision addressing the unrelated works exception. See Lluch v. American Airlines, Inc., 899 So.2d 1146 (Fla. 3d DCA 2005). There, Lluch was a custodian/janitor employed by ABM Janitorial Services, which had a contract with American Airlines (American) to provide cleaning services for American at Miami International Airport. See id. at 1146. Lluch was injured when Carlton Service, an American baggage handler who was operating an American tractor pulling several baggage carts, hit a trash cart causing the cart to fall on top of Lluch, breaking his foot. See id. at 1147. After concluding that American was Lluch's statutory employer under the workers' compensation law, the Third District determined that the trial court erred in granting summary judgment in favor of American and Service based on coemployee immunity. See id. at 1147-48.[3]
In analyzing the unrelated works exception based on this Court's decision in Taylor, the Third District indicated that it was persuaded by Justice Lewis's separate opinion in Taylor, in which he proposed applying "a consolidated `physical location/business purpose' test and . . . `same project' test." Id. at 1149.[4] Applying the *1172 "physical location/business purpose" test, the Third District explained that although
both Lluch and Service worked at the airport in the area where the baggage is unloaded from the airplanes[,] . . . Lluch's job required him to be elsewhere for a significant part of his work day because he had to remove the trash from American offices and haul it away to the garbage dumpsters. He was not required to clean under the baggage carousel on a regular basis. Lluch had nothing to do with Service and, in fact, had no idea who Service was.

Lluch, 899 So.2d at 1149 (emphasis supplied). The Third District also concluded that Lluch and Service were not part of the same team because
they had two different employers. Lluch is employed by ABM, and Service is employed by American. Service is a baggage handler, and Lluch cleans and removes trash. Lluch's testimony reveals that the two men had never met each other before the date of the accident. They received different instructions from different people, unlike the scenario in Sanchez v. Dade County School Board, 784 So.2d 1172, 1173 (Fla. 3d DCA 2001), review dismissed as improvidently granted, 889 So.2d 778 (Fla. 2004). The affidavit of Clifford Coll stated that ABM has responsibility for keeping the baggage loading area and conveyor belt in "clean debris free condition." In opposition, Lluch stated that he has nothing to do with the operation, cleaning or maintenance of the baggage carousel, although sometimes ABM requested that he clean the floor area adjacent to the carousel. Lluch and Service were not true fellow employees.
Id. at 1149-50 (emphasis supplied).
Similar to the facts presented in Lluch in which the coemployees worked for different employers, in this case Vega worked for the county's Police Department and the traffic repair signal personnel worked for the county's Department of Public Works, each of which are headquartered at different locations. Vega and the traffic signal repair personnel were not supervised by the same individuals and did not have similar duties. In addition, Vega neither knew nor had any interaction with employees of the Department of Public Works. We note that even at the time of the tragic accident, Vega's responsibilities of ensuring safe passage for school children had nothing to do with the regulation of the traffic lights.
In fact, the only significant distinction between the factual scenarios in this case and Lluch is that unlike the coemployees in Lluch, Vega and the traffic signal repair personnel did not work at the same location. Although location is not dispositive, the fact that the coemployees in this case worked primarily at different locations further supports a conclusion that the coemployees in this case were not assigned to related works.
Finally, the Third District's conclusion in this case is inconsistent with all of the other district court decisions that addressed this question. The district courts have consistently focused on the physical business location and the coemployees' job duties in determining whether the unrelated works exception applies. Until the Third District's decision in this case, no district court of appeal had held that coemployees that were neither assigned to work at the same location nor assigned similar job duties were engaged in related works.
By using overly broad definitions of the same project and the coemployees' job duties, the Third District ignored the other factors considered in Lluch. Its analysis also ignores the fact that the exception assumes that the coemployees are operating in "furtherance of the employer's *1173 business," § 440.11(1), and, thus, are all working on the same general project. Accordingly, we conclude that the Third District erred in holding that Vega and the traffic signal repair personnel were engaged in related works.

Factors Governing the Unrelated Works Analysis
Although we declined to adopt a specific test for determining the applicability of the unrelated works exception in Taylor, we recognize that we should provide further guidance to the trial courts and the district courts of appeal. We held in Taylor that the exception should be narrowly tailored. However, we did not intend to eviscerate the exception. Thus, we must return to the statutory language employed in section 440.11(1) to determine the scope of the exception and its application.
In deciding more precisely what the Legislature intended by the term "assigned primarily to unrelated works," we focus on the use of the words "assigned primarily." § 440.11(1). We conclude that the phrase "assigned primarily to unrelated works" in section 440.11(1) has both an operational and a locational component. Thus, where coemployees are assigned primarily to different departments and different locations, and are assigned primarily to different job functions, the fact that the coemployees may have some broad overlapping responsibilities is not dispositive.
Although we stated in Taylor that "we could not hope to contemplate the myriad of factual circumstances" that might arise in applying the unrelated works exception, 888 So.2d at 5, a review of the district court decisions shows common factors used in the analysis of the applicability of the unrelated works exception. These include: (1) whether the coemployees work at the same location, (2) whether the coemployees must cooperate as a team to accomplish a specific mission; (3) the size of the employer; (4) whether the coemployees have similar job duties, (5) whether the coemployees have the same supervisor; and (6) whether the coemployees work with the same equipment.
In a case such as this one, in which the coemployees do not work at the same location, it is more likely that the coemployees will be considered to be assigned primarily to unrelated works. However, in making this determination the courts should also consider whether the coemployees must cooperate as a team to further a specific mission of the employer, not whether they further the same general mission of the employer. In deciding whether coemployees must cooperate as a team to further a specific mission of the employer, it may be helpful to look to the last four factors enumerated above: the size of the employer and whether the coemployees work with the same equipment, have the same supervisor, or have similar duties.
Further, although we recognize that when employees work at the same location, it is more likely that they will not be considered to be assigned primarily to unrelated works,[5] we caution that in those *1174 circumstances, the courts must also consider whether the work being performed is part of a team effort. Clearly, as Justice Lewis observed, a large university that has thousands of employees across many acres warrants different consideration than a small, single-structure location such as an elementary school, where everyone from teachers to custodial staff may be considered part of the same team. See Taylor, 888 So.2d at 15 (Lewis, J., concurring in result only).
Until the Legislature determines that it should further define the unrelated works exception, courts will continue to struggle with its application. However, we hope that the factors we have identified will provide guidance to the lower courts in applying this exception narrowly without eviscerating it.

CONCLUSION
For the reasons provided herein, we hold that coemployees who work for different departments and at different locations, answer to different supervisors, and have primary assignments involving different duties and functions are engaged in unrelated works triggering the exception to workers' compensation immunity in section 440.11(1). Accordingly, we conclude that Vega, who was working as a school crossing guard, and the traffic signal repair personnel charged with maintaining the traffic signals at the intersection where she was working were engaged in unrelated works and that her husband's wrongful death claim is not barred by worker's compensation immunity. We therefore quash the decision of the Third District, which held to the contrary, and remand for entry of judgment for Aravena on the jury's verdict in his favor.
It is so ordered.
ANSTEAD, QUINCE, and CANTERO, JJ., concur.
BELL, J., specially concurs with an opinion.
LEWIS, J., concurs in result only with an opinion.
WELLS, J., dissents with an opinion.
BELL, J., specially concurring.
Given the absence of any statutory definition for the unrelated works exception, I concur with the majority's definition. However, as Justice Wells, I too believe that the question of what is "unrelated work" is a question of law, not a question of fact. I also join his call for the Legislature to address whether it intended the unrelated work exception to result in a county employee receiving from the county both workers' compensation benefits and common law tort damages for injuries suffered in the same work-related accident.
LEWIS, J., concurring in result only.
I concur in result based on my continued belief that this Court should adopt the analytic parameters I previously outlined in Taylor v. School Board of Brevard County, 888 So.2d 1, 14-15 (Fla.2004) (Lewis, J., concurring in result only). Under the analytical framework I previously proposed in Taylor, the unrelated works exception would apply as a matter of law in the instant case because Vega and the traffic repair personnel were neither assigned to work at the same location nor were they working together from an operational perspective nor were they part of the same team or same joint project. See id. However, because the majority's analysis is very similar to that which I proposed in Taylor and ultimately concludes *1175 that the exception applies, I concur with the result.
WELLS, J., dissenting.
I dissent. I would approve the decision of the Third District Court of Appeal in the present case.
I cannot join the majority because I conclude that the majority opinion is at a substantial variance from the majority opinion which we issued in 2004 in Taylor v. School Board of Brevard County, 888 So.2d 1 (Fla.2004). In Taylor, the majority opinion stated:
Hence, we are bound to apply these principles in our analysis. We initially note that, in one sense, all employees of the same employer could always be considered engaged in related works since they are all charged to carry out the mission of the employer. At the same time, however, some distinction could always be drawn between the work of most employees so as to make their work unrelated. Because the unrelated works exception set out in section 440.11(1) represents an exception to the broad exclusive remedy provisions of the Florida Workers' Compensation Law, we conclude that under the ordinary rules of statutory construction we must interpret it narrowly. See Samara Dev. Corp. v. Marlow, 556 So.2d 1097, 1100 (Fla.1990) ("[I]t is a well-recognized rule of statutory construction that exceptions or provisos should be narrowly and strictly construed.")
888 So.2d at 5. We further stated:
A contrary holding giving wide breadth to the rare exceptions to workers' compensation immunity would merely erode the purpose and function of the Workers' Compensation Law as established by the Legislature. We agree with the observations of the Fourth District in its recent decision in Fitzgerald v. South Broward Hospital District, 840 So.2d 460, 463 (Fla. 4th DCA 2003), that the unrelated works exception should be narrowly construed because "[a]n expansive construction would obliterate the legislative intent that the system operate at `a reasonable cost' to the employer" and that to decide otherwise would "erode the immunity provided under the worker's compensation law . . . leading to a profusion of suits and a proliferation of costs."
888 So.2d at 6. The present majority expands the exception rather than following these principles and construing the exception narrowly.
I conclude that the Third District in this case followed our decision in Taylor in holding:
In the instant case, it cannot be said that these co-employees worked on entirely different projects. Nor can it be clearly demonstrated that the work of the County's traffic signal repair personnel, whose job was to regulate vehicular and pedestrian traffic, was unrelated to the work of the school crossing guard, whose job also was to regulate vehicular and pedestrian traffic at the same intersection. To hold otherwise would contravene the overall legislative intent of the workers' compensation law, which "was meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer." Taylor, 888 So.2d at 4.
Miami-Dade County v. Aravena, 886 So.2d 303, 305 (Fla. 3d DCA 2004). The district court should not be quashed for following this Court's majority opinion.
By broadening this exception so that many county employees will not be subject to workers' compensation immunity, the majority subjects counties to many employees collecting both workers' compensation *1176 benefits and common law damages from counties. This is a result of the present decision in combination with this Court's 1995 decision in Holmes County School Board v. Duffell, 651 So.2d 1176 (Fla.1995). The conclusion in Holmes County only made sense because the unrelated works exception was very narrow and only a few county employees would have the right to both. In light of the present decision, Justice Grimes' dissent, which was joined by Justices Overton and Harding, looks to be prophetic and the wiser view. I do not believe that the Legislature intended that the unrelated works exception expose the counties to the claims of many employees for both workers' compensation benefits and common law damages.
I do agree with the majority that the Legislature should define "unrelated works" so that the concept has a statutory definition. I believe that the Legislature needs to also specifically address the Holmes County decision and expressly state whether a county employee can collect workers' compensation benefits and sue the county for common law tort damages arising from the same work-related accident.
Finally, I do not agree with the majority's reliance on Lluch v. American Airlines, Inc., 899 So.2d 1146 (Fla. 3d DCA 2005). I cannot agree with that decision's holding that what is an unrelated work is a question of fact. The issue is a question of law. This Court has treated the issue as a question of law. I appreciate the majority's footnote 3, majority op. at 1171, which states that the majority does "not decide whether the Third District correctly held that the applicability of the unrelated works exception should be decided as an issue of fact." My concern is that by not deciding this issue, the majority is creating inequities for workers and application problems in the trial courts and appellate courts. The Third District's decision in Lluch creates a situation in which different juries can conclude that the same jobs are both within the unrelated works exception and not within the unrelated works exception. This will obviously lead to inequitable results. Whether the exception applies or does not apply should uniformly be a matter of law based on the Taylor standard for application of the exception so as to avoid inequities among workers and to avoid further confusion in the trial courts and appellate courts.
NOTES
[1] The defense of immunity is an affirmative defense that must be raised by a defendant. See Carib Ocean Shipping, Inc. v. Armas, 854 So.2d 234, 235 (Fla. 3d DCA 2003) (holding that the trial court abused its discretion by denying the defendant's motion to amend its answer to include the affirmative defense of workers' compensation immunity). The unrelated works exception to an immunity defense is an avoidance that must be plead and proved by the plaintiff. See Fla. R. Civ. P. 1.100(a) ("If an answer ... contains an affirmative defense and the opposing party seeks to avoid it, the opposing party shall file a reply containing the avoidance.").
[2] We note that the "same project" language is derived from earlier cases involving construction sites, which did not analyze the words used in the statute. See Abraham, 666 So.2d at 233; Johnson v. Comet Steel Erection, Inc., 435 So.2d 908, 909 (Fla. 3d DCA 1983). In concluding that the unrelated works exception did not apply to coemployees who were "employed on-site in the same construction project," the Johnson court relied only on "prior cases [that] indicate the broad scope of immunity afforded a subcontractor for injuries to an employee of a general contractor." 435 So.2d at 909. Abraham in turn relied on Johnson. See 666 So.2d at 233.
[3] In reversing summary judgment in favor of American and Service based on workers' compensation immunity, the Third District concluded that was a factual issue. Id. at 1148. We do not decide whether the Third District correctly held that the applicability of the unrelated works exception should be decided as an issue of fact. Indeed, almost all of these unrelated works cases have been decided based on undisputed facts as a matter of law. We discuss Lluch simply to demonstrate that under similar circumstances to those presented in this case, the Third District did not foreclose the application of the unrelated works exception.
[4] Although a majority of the Court in Taylor declined to set forth a specific test for evaluating the unrelated works exception, in a concurring in result only opinion Justice Lewis articulated the parameters he would have adopted:

First, if co-employees are not assigned to work at the same physical business location, and the work being performed at the injury location is not part of a team or the same joint project, I would conclude that the unrelated works concept should apply as a matter of law. Second, even if the employees are not assigned to work at the same physical business location but are directed to perform tasks at the injury location and the work being performed is part of a team or specific business project with co-employees, the exception would not apply with regard to the particular team or specific project co-employees. Third, if the co-employees are assigned to work at the same physical business location and the work being performed at the injury location is part of a team or directed to the same joint business project, the unrelated works exception would not apply. Finally, even if the co-employees are assigned to work at the same physical business location where the injury occurs but the work being performed is not part of a team or directed to the same joint business project, I would conclude that the unrelated works exception would be applicable as a matter of law....
Within the final category, namely when the co-employees are assigned to work at the same physical location where the injury occurs but the work being performed there is not part of a team or directed to the same joint business purpose, the application of the unrelated works exception is dependent upon a number of factors, including the size of the facility, the diversity of the acts performed there, and the relationship of the diverse activities being performed at the location. These factors must be considered when a court is trying to determine when work is either related or unrelated. A large, single-owner facility with voluminous employees, such as a university, that consists of diverse activities and diverse purposes warrants different consideration than a small, single-structure location with a dominant unitary purpose and only minor variations in duties, such as custodial staff to support the singular activity.
Taylor, 888 So.2d at 14-15 (Lewis, J., concurring in result only).
[5] In many of the district court decisions, an important factor in the analysis of whether the unrelated works doctrine is applicable appears to be whether the coemployees were assigned to the same work location. Had the Legislature intended to allow all employees who did not work at the same location to sue a coemployee and preclude all employees who did work at the same location from suing a coemployee, the Legislature could have used more precise language to effectuate this intent. For example, as noted by the county, an earlier version of what eventually became the unrelated works exception in section 440.11(1) provided that an employee could sue a fellow employee where "they are not assigned to the same job site or are assigned primarily to unrelated works." Fla. S. Comm. on Com., CS for SB 636 (1978).