DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WILSON CICERON** and **ROSIE CICERON,** his wife,
Appellants,

v.

**SUNBELT RENTALS, INC.,**
Appellee.

No. 4D13-3216

[April 15, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. CACE 10-019219 (12).

Rodrigo L. Saavedra, Jr. and Michael I. Pugliese of Rodrigo L. Saavedra, Jr., P.A., Fort Lauderdale, for appellants.

Richard A. Sherman, Sr. and James W. Sherman of Richard A. Sherman, P.A., Fort Lauderdale, and Joel R. Wolpe of Wolpe, Leibowitz & Fernandez, LLP, Miami, for appellee.

CONNER, J.

Wilson Ciceron and Rosie Ciceron appeal the trial court's order granting final summary judgment in favor of Sunbelt Rentals, Inc. ("Sunbelt") in this negligence action against Sunbelt after Wilson Ciceron ("Ciceron") suffered an injury while working on a construction site. Ciceron argues that the trial court erred in determining that Sunbelt was a subcontractor on the project entitled to horizontal immunity pursuant to section 440.10(1)(e), Florida Statutes (2010). We agree and reverse.[1]

*Factual Background and Trial Court Proceedings*

Butters Construction ("Butters") was the general contractor for the renovation of a large retail store. Butters subcontracted work to Ciceron's

[1] Because we reverse on the determination that Sunbelt was a subcontractor, we do not address whether an exception applies for horizontal immunity based on gross negligence by the subcontractor.

employer, Wildcat Demolition, for demolition work on the site. In addition, Butters also subcontracted work to Associated Industries (an electrical contractor) and D&D Welding (a welding contractor). Associated Industries and D&D Welding rented scissor lifts from Sunbelt under separate contracts. The rental agreements provided that Sunbelt was to deliver the scissor lifts, repair them if necessary (not including routine maintenance), and pick them up.[2] The scissor lifts were to remain at the construction site while the construction project was ongoing. Sunbelt also would provide training to the employees of Associated Industries and D&D Welding on the operation of the scissor lifts as needed. However, Sunbelt employees were not responsible for operating the scissor lifts on site after delivering them, except as necessary for repairs.

Ciceron's complaint alleged that on the day of the accident, Ciceron was working for his employer on the construction site. At the site, one of the scissor lifts had become inoperable. A Sunbelt employee came to the site and attempted to remove the inoperable scissor lift with a truck that had a broken winch. Ciceron alleged that the Sunbelt employee was unable to load the scissor lift onto the truck and summoned the assistance of Ciceron and his co-workers to assist with the loading of the scissor lift, directing the loading operation by instructing Ciceron and his co-workers on how to position the lift. During the course of loading the scissor lift onto the truck, Ciceron suffered serious bodily injury resulting in the amputation of his leg. Ciceron alleged that Sunbelt owed a duty of care to remove the scissor lift from the job site in a safe manner so as to avoid injury to those in the area. It was further alleged that Sunbelt breached this duty by utilizing insufficient and inexperienced personnel in the removal of the broken scissor lift, negligently directing the loading of the lift, and by utilizing a truck with a broken winch, creating the dangerous condition of loading the scissor lift onto the truck without the proper equipment.

Sunbelt moved for summary judgment, arguing that Ciceron had already received worker's compensation benefits from his employer, Wildcat Demolition, and that the negligence and loss of consortium claims against Sunbelt were barred by horizontal immunity under worker's compensation statutes. Attached to the motion for summary judgment was an affidavit of Sunbelt's representative, attesting that Sunbelt had worker's compensation insurance in effect on the day of the accident and that Sunbelt was a subcontractor of Associated Industries and D&D

---

[2] Deposition testimony indicated that Associated Industries and D&D Welding, not Sunbelt, were responsible for all routine maintenance, such as checking and adding fuel, checking oil, and replacing water in batteries.

Welding. In addition, Sunbelt filed several deposition transcripts in support of its motion for summary judgment, contending it was a subcontractor of Associated Industries and D&D Welding.

In response, Ciceron filed a memorandum of law in opposition to Sunbelt's motion for summary judgment, pointing out that there were factual disputes as to how the incident occurred and arguing that Sunbelt merely rented scissor lifts to Associated Industries and D&D Welding, and did not qualify as a subcontractor, and was therefore not protected by horizontal immunity.

The trial court granted Sunbelt's motion and entered final judgment in its favor.

*Appellate Analysis*

The granting of a motion for summary judgment is reviewed *de novo*. *Volusia Cnty v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000).

The primary issue on appeal is whether the trial court erred in granting summary judgment by determining that Sunbelt was a "subcontractor" on the construction project, thereby entitling Sunbelt to horizontal immunity under the workers' compensation statute.

"Workers' Compensation Law is a 'comprehensive scheme . . . that generally provides workers' benefits without proof of fault and employers immunity from tort actions based upon the same work place incident.'" *Aravena v. Miami-Dade Cnty.*, 928 So. 2d 1163, 1167 (Fla. 2006) (quoting *Taylor v. Sch. Bd. of Brevard Cnty.,* 888 So. 2d 1, 2 (Fla. 2004)). Workers' compensation immunity has been broadly expanded by the legislature to include subcontractors and sub-subcontractors working at a construction site, precluding an employee of one contracting entity injured on the job from suing another contracting entity working at the same construction site in tort.[3] *See* § 440.10, Fla. Stat. (2004). The doctrine of horizontal immunity, re-enacted in 2004, under section 440.10(1)(e), Florida Statutes (2004) provides:

---

[3] *Ramcharitar v. Derosins,* 35 So. 3d 94 (Fla. 3d DCA 2010) contains a discussion of the history in Florida of "vertical immunity" (protecting claims against subcontractors by employees of a contractor working on the same jobsite) and "horizontal immunity" (protecting claims against subcontractors by employees of other subcontractors working on the same jobsite) under the workers' compensation statute.

A *subcontractor* providing services in conjunction with a contractor on the same project or contract work *is not liable for the payment of compensation to the employees of another subcontractor* or the contractor on such contract work *and is protected by the exclusiveness-of-liability provisions of s. 440.11 from any action at law or in admiralty on account of injury to an employee of another subcontractor,* or of the contractor, provided that:

1.  The subcontractor has secured workers' compensation insurance for its employees or the contractor has secured such insurance on behalf of the subcontractor and its employees in accordance with paragraph (b); and

2.  The subcontractor's own gross negligence was not the major contributing cause of the injury.[4]

§ 440.10(1)(e), Fla. Stat. (2004) (emphasis added).

The term "subcontractor" is not defined in the worker's compensation statute. Appellants assert we should look to the definition of the term contained in section 713.01(28), Florida Statutes (2010), with regards to mechanic's liens. *See Goldstein v. Acme Concrete Corp.*, 103 So. 2d 202, 204 (Fla. 1958) ("[I]n both the mechanics' lien statutes . . . and the Work[ers'] Compensation Act . . . the lawmakers use similar phrasing in dealing with construction projects. We may assume that in both chapters they intended certain exact words or exact phrases to mean the same thing. In a broad sense the chapters are in *pari materia*[] and should, to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together.").

Section 713.01(28) defines "subcontractor" as:

a person other than a materialman or laborer who enters into a contract with a contractor *for the performance of any part of such contractor's contract* . . . .

§ 713.01(28), Fla. Stat. (2010) (emphasis added). As can be seen, to fully understand the concept of "subcontractor" under the mechanics' lien

---

4 When the legislature re-enacted horizontal immunity, it also created an exception to horizontal immunity.

statute, it is necessary to consider the definitions of "materialman" and "contractor" under the same statute.

Section 713.01(20) defines "materialman" as:

> any person who furnishes materials under contract to the owner, contractor, subcontractor, or sub-subcontractor on the site of the improvement or for direct delivery to the site of the improvement or, for specially fabricated materials, off the site of the improvement for the particular improvement, and *who performs no labor in the installation thereof*.

§ 713.01(20), Fla. Stat. (2010) (emphasis added). Section 713.01(8) defines "contractor" as:

> a person other than a materialman or laborer who enters into a contract with the owner of real property for improving it . . .

§ 713.01(8), Fla. Stat. (2010) (emphasis added).

Although we agree that the definitions within the mechanics' lien statute offer some guidance for this case, none of the definitions seem directly applicable to entities like Sunbelt, which rents *equipment* for use by contractors and subcontractors at a construction site and not incidental to the sale of materials.[5] Instead, we find the language of the workers' compensation statutes and case law interpreting the statutory language to be more instructive.

The core concept for extending workers' compensation immunity from tort liability to subcontractors revolves around the notion of a contractor "subletting" part of its contractual obligation to work to a subcontractor. Section 440.10(1)(b), provides:

> (b) In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work *shall be deemed to be employed in one and the same business or establishment*, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees,

---

[5] We also note the goal of the mechanics' lien law is completely different from the goal of the workers' compensation law. For that reason, the protection afforded to a "subcontractor" under the one law may not be the same under the other law.

except to employees of a subcontractor who has secured such payment.

§ 440.10(1)(b), Fla. Stat. (2010) (emphasis added). As observed by the Fifth District in *Adams Homes of Nw. Florida, Inc. v. Cranfil*, 7 So. 3d 611, 613 (Fla. 5th DCA 2009), the effect of a contractor subletting part of the work is "to pass on to another an obligation under a contract for which the person so 'subletting' is primarily obligated." Thus, the intent of section 440.10 is "to ensure that employees engaged in the same contract work are covered under worker's compensation, regardless of whether they are employees of the general contractor or any of its subcontractors." *Id.* (citations omitted). Stated another way, "[t]he rationale of [section 440.10] is to equate the situation of work[ers] at a job in which various subcontractors are functioning under a general contractor with that which would obtain if the general contractor itself were employing the work[ers] directly." *Gulf Am. Fire and Cas. Co. v. Singleton*, 265 So. 2d 720, 721 (Fla. 2d DCA 1972).

The notion of a contractor "subletting" parts of the contracted work to subcontractors has resulted in the case law using the term "statutory employer" in reference to workers' compensation immunity. As we said in *Woods v. Carpet Restorations, Inc.*, 611 So. 2d 1303, 1304 (Fla. 4th DCA 1992):

> The concept of statutory employer, for worker's compensation purposes, is that a contractor who sublets all or any part of its contract work is the employer not only of its own employees but also of the employees of any subcontractor to whom all or any part of the principal contract has been sublet. § 440.10(1), Fla.Stat. (1991).

*See also Miami Herald Publg. v. Hatch*, 617 So. 2d 380 (Fla. 1st DCA 1993). Important to this case is the principle expressed in *Miami Herald,* that "[a]n entity working solely for itself, rather than performing contract work for another, does not meet the criteria for statutory employer."[6]

Ciceron argues that Sunbelt's contracts with Associated Industries and D&D Welding were merely for equipment rental and not for the

---

[6] The requirement for horizontal immunity that a contractor or subcontractor sublet part of its work to another is consistent with the definition of "subcontractor" under section 713.01(28), to the extent that section defines a subcontractor as "a person . . . who enters into a contract with a contractor *for the performance of any part of such contractor's contract.*" (emphasis added).

performance of any part of the work to be conducted by Associated Industries and D&D Welding or the general contractor. Thus, Ciceron maintains that Sunbelt failed to qualify as a subcontractor and therefore, was not entitled to horizontal immunity.

Sunbelt's opposing argument is that the trial court correctly found that it qualified for worker's compensation immunity as a subcontractor, asserting that in addition to providing the scissor lifts to Associated Industries and D&D Welding for their use during the construction project, Sunbelt also provided repair services, some of which were to be performed onsite, and training services (showing employees of Associated Industries and D&D Welding how to operate the scissor lifts).

Review of the record in this case demonstrates that Sunbelt employees were not being used during the course of construction to operate the lifts so as to actually incorporate or remove materials into or from the structure being constructed. Sunbelt was not hired to operate the scissor lifts so as to assist with any of the welding or structural work which D&D Welding was under contract to perform. Similarly, Sunbelt was not hired to operate the scissor lifts so as to assist with any of the electrical work Associated Industries was under contract to perform. Instead, Sunbelt was hired to deliver, pick up, and repair the scissor lifts, which on occasion would involve a repair at the construction site. Sunbelt was also hired to teach employees of Associated Industries and D&D Welding how to operate the scissor lifts, if needed. Thus, the facts of this case do not show that either Associated Industries or D&D Welding sublet to Sunbelt any of the work it had contracted with Butters to perform.

We therefore hold that under the facts of this case, Sunbelt was not a subcontractor protected under section 440.10 (1)(e), and as such, was not entitled to horizontal immunity. Accordingly, we reverse the trial court's order granting its motion for summary judgment, and remand for further proceedings consistent with this opinion.

*Reversed and Remanded.*

DAMOORGIAN, C.J. and TAYLOR, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

7